IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

GEORGE TREVINO;

    Plaintiffs;

v.

MICHAEL MOREE, in his individual capacity;
MICHAEL SHEA, in his individual capacity,

    Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff, George Trevino, for his Complaint and Jury Demand, states and alleges as follows:

### THE PARTIES

1. Plaintiff George Trevino is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein.

2. Defendant Michael Moree is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Moree is sued in his individual capacity as a police officer in the Greeley Police Department.

3. Defendant Michael Shea is a citizen of the United States and was a resident of the state of Colorado during the relevant times described herein. Defendant Shea is sued in his individual capacity as a police officer in the Greeley Police Department

### JURISDICTION AND VENUE

1

4. This Court has jurisdiction over the subject matter of this action pursuant to C.R.S. Const. art. VI,§ 9(1), and over the parties pursuant to C.R.S. § 13-1-124(1)(b) because this action arises from the commission of tortious acts within the State of Colorado, by residents of the State of Colorado.

5. Pursuant to C.R.C.P. 98(c), venue is proper in the District Court in and for Weld County because the conduct complained of occurred within Weld County.

## ALLEGATIONS

6. On the afternoon of January 23, 2023, Officer Moree was called to 2424 17th Avenue, Greeley, Colorado for suspicious activity.

7. At the location, Officer Moree observed a brown Lincoln town car with a tinted plate cover.

8. The brown Lincoln town car belonged to and was being driven by Mr. George Trevino.

9. After Mr. Trevino pulled away from the area, Officer Moree followed and initiated a traffic stop at the 1100 block of 17th Street due to the tinted plate cover.

10. When Officer Moree asked Mr. Trevino for license, insurance, and registration, Mr. Trevino complied and produced all requested documents.

11. Officer Shea soon after arrived on scene as a cover officer for Officer Moree.

12. Upon running Mr. Trevino's license plate, Officer Moree discovered a warrant for Mr. Trevino's arrest out of the city of Evans, Colorado.

13. When Officer Moree and Officer Shea returned to Mr. Trevino's vehicle, Officer Moree opened Mr. Trevino's car door and asked Mr. Trevino to step out of his vehicle.

14. Mr. Trevino complied and stepped out of the vehicle.

15. Officer Moree then grabbed Mr. Trevino's jacket and told Mr. Trevino to face the car.

16. Officer Moree then stated that Mr. Trevino was under arrest.

17. While asking what he is under arrest for, Mr. Trevino turned towards the car and moved his right arm to the back of his body.

18. While Mr. Trevino initially twisted his torso to face officers, Mr. Trevino attempted to comply with their demands.

19. Officer Moree then gave Mr. Trevino repeated commands to get on the ground.

20. As both officers had hands on Mr. Trevino, Mr. Trevino, trying to comply with their demands, told officers to let him go down to the ground.

21. Mr. Trevino stated aloud that he was trying to go down, but that officers were pulling his arms.

22. In fact, Mr. Trevino is observed attempting to bend his knees to go towards the ground.

23. Officer Moree tells Mr. Trevino he is going to get tased, to which Mr. Trevino asks "why?"

24. Rather than responding, Officer Moree responds, "get on the ground," and Officer Shea gives a conflicting command to "turn around."

25. Officer Shea was still holding onto Mr. Trevino's person when the conflicting commands were given.

26. When these conflicting commands were given, Mr. Trevino was confused, fearful, frozen in place, and not making any statements.

27. Neither officer gives a unified, clear command to Mr. Trevino prior to the deployment of the taser.

28. At no time prior to the use of the taser was Mr. Trevino resisting arrest - to the contrary, he was trying to comply with the commands of Officers Shea and Moree.

29. At no time prior to the use of the taser was Mr. Trevino engaged in any conduct which could be understood as a threat to the safety of either Officer Shea, Officer Moree, or any other individual.

30. At no time prior to the use of the taser was Mr. Trevino committing any crime.

31. Officer Moree then tased Mr. Trevino on the right shoulder with a drive-stun taser.

32. Within a second, Officer Moree tased Mr. Trevino a second time on his lower right side.

33. As Officer Moree tased Mr. Trevino a second time, Officer Shea grabbed Mr. Trevino by the back of the head and successfully forced him to the ground.

34. As Mr. Trevino was buckled over and falling to the ground, Officer Moree then places the taser at the right side of Mr. Trevino's neck.

35. After Mr. Trevino was fully on the ground, Officer Moree tased Mr. Trevino a third time—under the left center of his torso on his heart.



36. Each time Officer Moree administered the taser on Mr. Trevino, Mr. Trevino experienced severe pain.

37. A drive stun, as were repeatedly applied to Mr. Trevino, does not interrupt the central nervous system like the use of prongs, but instead simply inflicts pain.

38. After Officer Moree tased Mr. Trevino in his chest region and while Mr. Trevino was still laying on the ground, Mr. Trevino grabbed Officer Moree's right wrist and pushed it away in an attempt to stop the pain Officer Moree was continually inflicting.



39. Mr. Trevino continued to hunch himself over and hold onto Officer Moree's right wrist to protect himself from officers after being tased in the chest.

40. Mr. Trevino exclaimed that he did not want to be tased anymore.

41. Officer Moree then punched Mr. Trevino in the head with his left fist at least three times.

42. Officer Moree then let go of the taser and began to punch Mr. Trevino in the head.

43. Mr. Trevino lost his grip on Officer Moree's right wrist when Officer Moree pulled it back to wind up to punch Mr. Trevino, and Officer Moree subsequently punched Mr. Trevino in the head, back of the head, and surrounding area at least nine times.

44. Mr. Trevino used his right arm to attempt to shield himself from Officer Moree's blows to the head.

5

45. At no point during the tasing of Mr. Trevino or the punching of Mr. Trevino did Officer Shea attempt to intervene, notwithstanding his ample opportunity to do so.

46. Before Officer Moree tased Mr. Trevino, he announced that he was going to tase Mr. Trevino, yet Officer Shea did not stop an objectively unreasonable use of force given the circumstances.

47. As a result of Officer Moree's punches to Mr. Trevino's person, Mr. Trevino suffered a broken thumb, broken jaw, and broken ribs, as well as other injuries necessitating surgery.

48. At no point did Mr. Trevino initiate the use of physical force against officers.

49. At no point did Mr. Trevino intend or make any indicia that he intended to use physical force against officers.

50. At no point did Mr. Trevino use any force against any Officer or other person.

51. At no point did Mr. Trevino make threats against officers.

52. At no point did Mr. Trevino commit any criminal offense.

53. At no point did Mr. Trevino resist or flee arrest.

54. He simply asked why he was being arrested, tried to comply with orders to get down, questioned why he was about to be tased, and in response, was met with overwhelming force which resulted in serious physical injuries.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Colo. Const. Art. II, Section 7 – C.R.S. § 13-21-131 — Excessive Force
### (Plaintiff vs. Defendant Moree)

55. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

56. Defendant acted under color of state law, and within the course and scope of their

6

employment, in their capacity as law enforcement officers for the Fountain Police Department at all times relevant to the allegations in this Complaint.

57. Defendant was a "peace officer" under C.R.S. § 24-31-901(3) employed by a local government and therefore subject to C.R.S. § 13-21-131.

58. Plaintiff had a protected interest under Colo. Const. Art. II, Section 7 to be secure in his person against unreasonable searches and seizures, including the use of excessive force.

59. Officer Moree's use of the taser three times upon Mr. Trevino after officers gave Mr. Trevino conflicting commands—the taser's last point of contact being near the heart and only administered after Mr. Trevino was already on the ground—was unreasonable under the circumstances and an excessive use of force against Mr. Trevino.

60. Under Colorado law, citizens may engage in self-defense to protect from excessive uses of force by peace officers.

61. Officer Moree then engaged in further unreasonable uses of force against Mr. Trevino when he punched Mr. Trevino at least a dozen times, including in the head region, causing Mr. Trevino serious bodily injury.

62. Under Colorado law, an initial aggressor is not justified in using physical force against an individual defending themselves against the initial aggressor.

63. Defendant engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally protected rights.

64. Plaintiff suffered injuries, damages, and losses as a direct and proximate cause and consequence of Defendant's unconstitutional acts and omissions, described above.

65. Defendant's intentional actions or inactions as described herein intentionally deprived

Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the State of Colorado.

66. Defendant's herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

## SECOND CLAIM FOR RELIEF
### C.R.S. § 13-21-131 – Failure to Intervene
### (Plaintiff vs. Defendant Shea)

67. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

68. Mr. Trevino has a constitutional right to be free of unreasonable searches and seizures, including the right to be free from excessive uses of force.

69. Officer Moree violated Mr. Trevino's constitutional right to be free of unreasonable searches and seizures when Officer Moree administered a taser upon Mr. Trevino and punched Mr. Trevino at least a dozen times, causing Mr. Trevino serious bodily injury.

70. Defendant Shea was present and aware of Officer Moree's violation of Mr. Trevino's constitutional rights.

71. Defendant Shea had reasonable time to intervene with Officer Moree's violation of Mr. Trevino's constitutional rights.

72. Defendant Shea failed to take any action to prevent Officer Moree's violation of Mr. Trevino's constitutional rights.

73. Defendant Shea engaged in this conduct intentionally, knowingly, willfully, and in

reckless disregard of Plaintiff's constitutional rights.

74. Plaintiff suffered injuries, damages, and losses as a direct and proximate cause and consequence of Defendant Shea's unconstitutional acts and omissions, described above.

75. Defendant Shea's intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the state of Colorado.

76. Defendant Shea's herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Fourth Amendment Violation — Excessive Force**
**(Plaintiff vs. Defendant Moree)**

77. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

78. Defendant acted under color of state law, and within the course and scope of his employment, in his capacities as law enforcement officers for the Greeley Police Department at all times relevant to the allegations in this Complaint.

79. Defendant is a "person" under 42 U.S.C. § 1983.

80. Plaintiff had a protected Fourth Amendment interest against being victimized by the use of excessive force at the hands of law enforcement personnel.

81. Defendant unlawfully seized Plaintiff by means of excessive physical force, including the

use of a taser and strikes to Plaintiff's person.

82. Defendant's actions, as described herein, were objectively unreasonable in light of the circumstances confronting him..

83. Plaintiff gave the officers no reason to fear for their safety, Plaintiff was not fleeing, and Plaintiff was attempting to comply with officer demands.

84. Defendant did not have a legally valid basis to seize Plaintiff in the manner and with the level of force used under the circumstances presented.

85. Defendant recklessly created the situation in which he used force.

86. At the time when Defendant used excessive force against Plaintiff, Plaintiff had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure from unreasonable seizure through excessive force. Any reasonable law enforcement officer knew or should have known of this clearly established right.

87. Defendant engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally protected rights.

88. As a direct and proximate cause and consequence of Defendant's unconstitutional acts and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

89. Defendant's herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the vigil, and other compensatory and special damages.

90. Defendant's intentional actions or inactions as described herein intentionally deprived

Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Fourth Amendment Violation — Failure to Intervene
### (Plaintiff vs. Defendant Shea)

91. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs, as though fully set forth herein.

92. Defendant acted under color of state law, and within the course and scope of his employment, in his capacities as law enforcement officers for the Greeley Police Department at all times relevant to the allegations in this Complaint.

93. Defendant is a "person" under 42 U.S.C. § 1983.

94. Plaintiff had a protected Fourth Amendment interest against being victimized by the use of excessive force at the hands of law enforcement personnel.

95. Defendant Moree unlawfully seized Plaintiff by means of excessive physical force, including the use of a taser and strikes to Plaintiff's person.

96. Defendant Shea was present and aware of Defendant Moree's unlawful uses of force against Plaintiff.

97. Defendant Shea failed to intervene to prevent Defendant Moree from violating Plaintiff's constitutional rights, notwithstanding reasonable opportunity to do so, and is thereby liable for such failure to intervene.

98. Defendant's actions were objectively unreasonable in light of the circumstances confronting him.

99. As a direct and proximate cause and consequence of Defendant's unconstitutional acts

and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

100. Defendant's herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the vigil, and other compensatory and special damages.

101. Defendant's intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award him all relief allowed by law, including but not limited to the following:

A. All appropriate relief at law and equity;

B. Declaratory relief and other appropriate equitable relief;

C. Economic losses on all claims as allowed by law;

D. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

E. Attorneys' fees and the costs, including expert witness fees, on all claims allowed by law;

F. Pre-and post-judgment interest at the lawful rate; and

G. Any other appropriate relief at law and equity that this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 22nd day of January 2025.

<u>s/ Edward Milo Schwab</u>
Edward Milo Schwab, #47897
Ascend Counsel, LLC
2401 S. Downing Street
Denver, CO 80210
(303) 888-4407
milo@ascendcounsel.co

ATTORNEY FOR PLAINTIFF